UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DOUGLAS M. LAMBERT | * |
| Plaintiff, | * |
| v. | * Civil Action No. 24-cv-11980-ADB |
| EMERALD PUBLISHING LIMITED and EMERALD GROUP PUBLISHING INC., | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Douglas Lambert ("Lambert") brings this action for copyright infringement, breach of contract, and declaratory relief against Emerald Publishing Limited and Emerald Group Publishing Inc. (collectively, "Emerald"). [ECF No. 17 ("Amended Complaint" or "Am. Compl.")]. Currently before the Court is Emerald's motion to dismiss for failure to state a claim. [ECF No. 21]. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

    A.   Factual Background

The following facts are drawn from the Amended Complaint. For purposes of this motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).

Lambert is a professor of logistics and supply chain management at The Ohio State University Fisher College of Business. [Am. Compl. ¶ 8]. In April 1990, he and a fellow professor, Martin Christopher, formed a company, The International Logistics Research Institute, Inc. (the "Institute"), to create and publish an academic journal called The International Journal of Logistics Management (the "Journal"). [Id. ¶¶ 4, 9]. Between 1992 and 2004, Lambert contributed eleven articles to the Journal, but, for ten of those eleven articles, he never expressly transferred the copyright in his articles to the Institute. [Id. ¶¶ 15–16]; [ECF No. 17-1 (list of articles)].

In 2005, the Institute sold the "title, publishing rights, and goodwill associated with the Journal" to Emerald Publishing Limited (then known as Emerald Group Publishing Limited), a global digital publisher of scholarly journals and books based in Great Britain, for approximately $155,000. [Am. Compl. ¶¶ 6, 11]. The transaction was governed by an acquisition agreement between the Institute and Emerald Publishing Limited, which Lambert signed on behalf of the Institute. [Id. ¶¶ 11–13]; [ECF No. 17-2 (acquisition agreement)]. Lambert asserts the agreement is governed by Florida law. [Am. Compl. ¶ 12]. Paragraph 13 of the agreement provides in full:

> As from the **Transfer Date**, copyright on all published issues and content of [the Journal], in so far as it is owned by [the Institute], will transfer to **EMERALD.** Copyright in articles authored or co-authored by either Martin Christopher or Douglas Lambert remains with the respective author and a note to this effect will appear on the published articles in the wording specified by the authors. Martin Christopher and Douglas Lambert reserve the right to republish or distribute the work in whole or in part, in any medium with reference to the original journal publication. [Emerald] is authorized to take the necessary steps to protect the Work from unlawful copying. The Work may be distributed on its own, with other related materials or part of a database. [Emerald] may authorise other reputable third parties (such as document delivery services) to do the same, ensuring maximum international dissemination and citation of the Work. Emerald may assign a Digital Object Identifier (DOI) to the Work to facilitate this process via reference linking technology.

[ECF No. 17-2 at 3].

Lambert claims that the acquisition agreement permitted Emerald to reproduce and distribute copies of the articles for which he retained the copyright only as part of the Journal, not individually, [Am. Compl. ¶ 17], and that Emerald was required to include on each such article (when published as part of the Journal) a notice identifying Lambert as the copyright owner, [id. ¶ 19].

Emerald Publishing Limited and its U.S. affiliate Emerald Group Publishing Inc. jointly own a website, Emerald Insight, through which they sell academic articles in the United States. [Am. Compl. ¶¶ 7, 20].  "[A]t some unknown time between 2008 and 2017," Emerald started offering for download individual digitized copies of Lambert's articles.  [Id. ¶ 23].  In or around 2024, Lambert learned that Emerald had reproduced and distributed over 160,000 individual copies, [id. ¶ 24], and, based on the current cost per download of forty-four dollars, Lambert estimates that Emerald has received over seven million dollars "by illegally distributing individual copies" of his articles, [id. ¶ 25].  He also asserts that Emerald has reproduced, distributed, and sold the Journal without including the required notice on his articles.  See [id. ¶¶ 19, 31, 43].

### B.     Procedural History

On August 1, 2024, Lambert brought the instant action against Emerald. [ECF No. 1]. After Emerald moved to dismiss, [ECF No. 14], Lambert filed the Amended Complaint, asserting eleven copyright-infringement claims, one breach-of-contract claim, and one claim for declaratory relief under 28 U.S.C. § 2201(a), [Am. Compl.], which mooted the pending motion to dismiss, [ECF No. 18]. On December 10, 2024, Emerald moved to dismiss the Amended Complaint for failure to state a claim, [ECF No. 21], and, on December 24, 2024, Lambert opposed the motion, [ECF No. 23].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pled facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of

plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. Copyright Claims

Emerald argues that Lambert's copyright-infringement claims fail because Paragraph 13 of the acquisition agreement gave it a non-exclusive right to distribute Lambert's articles not only as part of the Journal, but also on their own. [ECF No. 22 at 10–13]. Emerald also contends that, to the extent Lambert's copyright claims are based on its alleged failure to include notices on his articles, they fail because the Copyright Act does not provide any attribution rights for written works. [Id. at 14]. Lambert counters that the Institute never had the right to publish his articles on their own and therefore could not have transferred it to Emerald, and that, in any case, Emerald did not clearly acquire that right under the acquisition agreement. [ECF No. 23 at 6–11]. He also argues that Emerald's right to distribute his articles as part of the Journal was conditioned on including the required copyright notices, and that, because Emerald violated this "condition precedent," its distribution was unauthorized.[1] [Id. at 11–12].

The Court agrees with Lambert that the acquisition agreement does not bar his copyright-infringement claims but holds that he cannot base any copyright claim on Emerald's alleged failure to provide copyright notices with his articles.

Basic principles of copyright law resolve the parties' disagreement about the acquisition agreement. The Copyright Act grants copyright protection to "original works of authorship fixed

---

[1] In its discussion of Lambert's declaratory-relief claim, Emerald appears to disagree with this characterization, arguing that any breach of the acquisition agreement would provide Lambert, at most, with a claim for breach of contract, rather than for copyright infringement. [ECF No. 22 at 15–16].

in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a). A copyright owner has certain exclusive rights to the copyrighted work, including the right to copy and distribute the work and to prepare derivative works based on it. Id. § 106(1)–(3). "One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement." T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006); see also 17 U.S.C. § 501.

"Copyright in a work . . . vests initially in the author or authors of the work." 17 U.S.C. § 201(a). This general rule also applies to individual contributions to a collective work, meaning that authors own the copyright to their contributions, but not to the collective work. See id. § 201(c); N.Y. Times Co. v. Tasini, 533 U.S. 483, 493–94 (2001) (noting that § 201(c) "recognizes two distinct copyrighted works:" the "separate contribution" and "the collective work"). "In the absence of an express transfer of the copyright or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series." 17 U.S.C. § 201(c). Accordingly, if the owner of copyright in the collective work reproduces and distributes authors' individual contributions as individual contributions (as opposed to as part of the collective work), it "invade[s] the core of the [a]uthors' exclusive rights," Tasini, 533 U.S. at 500–01, and the authors can sue for infringement.

Copyright owners may transfer ownership of any of their exclusive rights "by any means of conveyance." 17 U.S.C. § 201(d); see also id. § 204(a) (requiring transfers to be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent").

"Ownership is the sine qua non of the right to transfer" in copyright law, In re Patient Educ. Media, Inc., 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997), as in property law more generally, e.g., Mitchell v. Hawley, 83 U.S. 544, 550 (1872) ("No one in general can sell personal property and convey a valid title to it unless he is the owner or lawfully represents the owner. Nemo dat quod non habet."); Campbell Printing Press & Mfg. Co. v. Walker, 1 So. 59, 64 (Fla. 1886) ("The property not having vested in the [debtors], though delivered to them, they could not sell what they did not own, nemo dat quod non habet."). This means that transferees may, absent contractual restrictions, reconvey their rights, but those who lack title—including, for example, non-exclusive licensees—may not do so, unless they have the copyright owner's permission. 3 David Nimmer, Nimmer on Copyright § 10.02[B][4][a] (2025); see also 17 U.S.C. § 101 (defining "transfer of copyright ownership" to include "an . . . exclusive license" but not "a nonexclusive license").

 Here, the acquisition agreement does not bar Lambert's copyright claims. Based on the Amended Complaint, Lambert retained the copyright in all but one of his articles when he contributed them to the Journal, conveying to the Institute, which owned the Journal, only the right to reproduce and distribute those articles as part of the Journal. [Am. Compl. ¶ 15]. In other words, Lambert, not the Institute, had the exclusive right to reproduce and distribute the articles as individual articles. Tasini, 533 U.S. at 498, 500–01. It follows that, when the Institute transferred to Emerald "copyright on all published issues and content of [the Journal], in so far as it is owned by [the Institute]," [ECF No. 17-2 at 3 (emphasis added)], the Institute could not, and did not, transfer to Emerald Lambert's right to reproduce and distribute the articles on their own, Mitchell, 83 U.S. at 550; Campbell, 1 So. at 64, regardless of how the terms of the acquisition agreement are interpreted.

Those terms are, however, central to the issue of whether Lambert can bring a copyright claim based on Emerald's alleged failure to include copyright notices on his articles. "A defendant's liability for failure to comply with a provision of a license agreement raises issues that lie at the intersection of copyright and contract law." Jorge v. Vimeo, 718 F. Supp. 3d 95, 103 (D. Mass. 2024) (quoting Photographic Illustrators Corp. v. Orgill, Inc., 370 F. Supp. 3d 232, 247 (D. Mass. 2019)), aff'd, No. 24-cv-1252, 2025 WL 884094 (1st Cir. Feb. 25, 2025). The cause of action available to the plaintiff depends on whether the contractual provision violated by the defendant is a "condition" or a "covenant." Photographic Illustrators Corp. v. Orgill, Inc., 953 F.3d 56, 59 (1st Cir. 2020). "[A] licensee who violates a condition of a license (and thus exceeds the license's scope) cannot claim the license as a defense to copyright infringement, but if the licensee merely violates a covenant, the licensor's only remedy is for breach of contract." Id. Whether a contractual term is a condition or a covenant is a question of state law. Photographic Illustrators Corp., 370 F. Supp. 3d at 248; see also Greenberg v. PATHS Program Holding, LLC (AZ), No. 19-cv-30032, 2024 WL 4012010, at *5 (D. Mass. July 2, 2024) ("Principles of state contract law apply to the construction of an assignment that purportedly transfers an exclusive right of the copyright owner where, as here, there is no conflict with federal policy." (citation omitted)). In this case, Lambert alleges that Florida law applies, [Am. Compl. ¶ 12], which Emerald does not contest, see [ECF No. 22 at 10], and the Court therefore accepts, Patton v. Johnson, 915 F.3d 827, 837 (1st Cir. 2019) ("[W]hen the parties agree on the substantive law that should govern, we may hold the parties to their plausible choice of law." (quoting Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011))).

Under Florida law, "a condition precedent is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its

8

obligation to perform is made to depend." Miracle Health Servs., Inc. v. Progressive Select Ins. Co., 326 So. 3d 109, 113 (Fla. Dist. Ct. App. 2021) (citation omitted).  "[A]s a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." GE Med. Sys. S.C.S. v. SYMX Healthcare Corp., No. 18-cv-20922, 2021 WL 821433, at *17 (S.D. Fla. Mar. 4, 2021) (quoting In re Est. of Boyar, 592 So. 2d 341, 343 (Fla. Dist. Ct. App. 1992)); see also Gunderson v. Sch. Dist. of Hillsborough Cnty., 937 So. 2d 777, 779 (Fla. Dist. Ct. App. 2006) ("Provisions of a contract will only be considered conditions precedent or subsequent where the express wording of the disputed provision conditions formation of a contract and or performance of the contract on the completion of the conditions."). "[N]o particular words are necessary for the existence of a condition," Thomas v. Fusilier, 966 So. 2d 1001, 1004 (Fla. Dist. Ct. App. 2007), but, "in the absence of limiting terms like 'if', 'provided that,' or 'on condition that,' 'whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties,'" Nabbie v. Orlando Outlet Owner, LLC, 237 So. 3d 463, 466 (Fla. Dist. Ct. App. 2018) (quoting Reilly v. Reilly, 94 So. 3d 693, 697 (Fla. Dist. Ct. App. 2012)). "[W]here the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition." Boyar, 592 So. 2d at 343.

Here, the relevant provision in Paragraph 13 is a covenant, not a condition, meaning that Lambert cannot base any copyright claim on it. That provision states that "[c]opyright in [Plaintiff's] articles . . . remains" with him and that "a note to this effect will appear on the published articles in the wording specified by the authors." [ECF No. 17-2 at 3]. These are not express "limiting terms," Nabbie, 237 So. 3d at 466 (citation omitted), and neither the "plain,

9

unambiguous language" nor "necessary implication" suggests that the Institute's transfer to Emerald of whatever rights it had in the Journal depends on Emerald's post-hoc inclusion of a copyright notices in publications of the Journal, GE Med. Sys., 2021 WL 821433, at *17 (citation omitted). At the very least, it is doubtful that the parties intended such a condition, which could lead to absurd results, since Emerald's acquisition of exclusive rights would vary, on a publication-by-publication basis, depending on its inclusion or not of the notice. Boyar, 592 So. 2d at 343. Because Emerald has, at most, violated a contractual covenant, Plaintiff's "only remedy" for that violation "is for breach of contract." Photographic Illustrators Corp., 953 F.3d at 59.

Accordingly, Emerald's motion to dismiss Lambert's copyright claims is **GRANTED IN PART** to the extent those claims are based on Emerald's failure to include copyright notices in republications of the Journal and otherwise **DENIED**.

### B.  Breach of Contract Claim

Emerald seeks partial dismissal of Lambert's breach-of-contract claim "for pre-August 1, 2019 acts," arguing that Florida's five-year statute of limitations bars any liability that is predicated on them. [ECF No. 22 at 14–15]. Lambert responds that Emerald's limitations defense cannot be resolved at the dismissal stage, and that his claims may be timely under various exceptions to the statute of limitations even if the Emerald's "initial breach" occurred more than 5 years before he brought suit. [ECF No. 23 at 12–14].

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113–14 (1st Cir. 2009) (alteration in original) (quoting Trans-Spec Truck Serv.,

Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008)).  Dismissal on limitations grounds is warranted when "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (citations omitted).  If, however, the complaint "'sketch[es] a factual predicate' that provides a basis for avoiding the statute of limitations," dismissal on limitations grounds is inappropriate.  Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 206 n.1 (1st Cir. 2015) (quoting Trans-Spec Truck Serv., Inc., 524 F.3d at 320).

      Here, Lambert argues primarily that the portion of his breach-of-contract claim that targets pre-2019 acts by Emerald is timely under the doctrines of "ongoing nonperformance," "continuing breach," and "continuing harm."[2]  [ECF No. 23 at 13–14].  The Court finds the parties' briefing on this issue, which does not distinguish between these various doctrines or clearly tie their application to the allegations in the Amended Complaint, to be quite unhelpful, and declines to dismiss or limit Lambert's breach-of-contract claim on limitations grounds at this stage in the proceedings.  The Amended Complaint does not specify when Emerald allegedly breached the acquisition agreement, see [Am. Compl. ¶¶ 23, 49], and Emerald does not dispute that Lambert's claim is timely to the extent that it relies on acts after August 1, 2019, see [ECF No. 22 at 15]; see also Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1095 (Fla. Dist. Ct. App. 2014) (reversing dismissal where plaintiff alleged that defendant

---

[2] Lambert also refers in passing to "estoppel concerns," [ECF No. 23 at 13 (citing Acoustic Innovations, Inc. v. Schafer, 976 So. 2d 1139, 1144 (Fla. Dist. Ct. App. 2008)], but does not point to a factual predicate for application for the doctrine of equitable estoppel, which "presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct," Acoustic Innovations, 976 So. 2d at 1144 (emphasis omitted) (citation omitted).

violated agreement by "charg[ing] annual fees and dues . . . and that this breach is continuing in nature" and noting that "[i]f [the defendant] breached the [agreement] within the five-year limitations period . . . [plaintiff's] breach of contract claim . . . would not be barred by the statute of limitations."). That said, although Lambert faults Emerald for not "cit[ing] any case that would cut off damages to only breaches during the last five years," [ECF No. 23 at 14], the Court notes that the caselaw cited by Lambert generally concerns accrual, not damages, and thus does not establish the opposite, that is, that Lambert can recover for damages stemming from any breach that predates August 1, 2019 (five years before Lambert initiated the instant action). Nevertheless, because Lambert is correct that Florida law does not invariably "limit the accrual of a cause of action for breach of contract to the initial breach," Raffay v. Longwood House Condo. Ass'n, Inc., 389 So. 3d 589, 592 (Fla. Dist. Ct. App. 2023), and the facts establishing Emerald's limitations defense are not "clear 'on the face of the plaintiff's pleadings,'" Santana-Castro, 579 F.3d at 113–14 (citation omitted), Emerald's motion to dismiss Lambert's breach-of-contract claim is **DENIED**.

    C.    **Declaratory Relief**

Emerald moves to dismiss Lambert's claim for declaratory relief on the ground that it "relies on a theory of automatic rescission that is contrary to copyright law and state contract law." [ECF No. 22 at 15]. Lambert counters that his claim seeks other forms of declaratory relief, not simply rescission, and that Emerald's failure to include copyright notices on his articles both violated a "condition precedent" of the acquisition agreement, giving rise to a copyright-infringement claim, and was a "material breach" allowing him to rescind the agreement. [ECF No. 23 at 14–16].

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). "The Act creates a remedy, not an independent source of subject-matter jurisdiction." Sandoz Inc. v. Amgen Inc., 773 F.3d 1274, 1277 (1st Cir. 2014); see also Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995) ("The Act . . . makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis."). If the substantive issues would be governed by state law in a coercive action, the federal court in a declaratory-judgment action "applies state law on substantive issues, but federal law controls the issue of whether the court may properly render a declaratory judgment." In re Murray Energy Holdings Co., 634 B.R. 951, 976 n.12 (Bankr. S.D. Ohio 2021); see also 10B Wright & Miller's Federal Practice & Procedure § 2756 ("On the substantive issues that may arise in an action for declaratory judgment, the rule of Erie Railroad Company v. Tompkins controls." (footnote omitted)). The Supreme Court has noted that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites," Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995), and "courts have routinely dismissed declaratory judgment claims that are merely redundant of a plaintiff's other claims," BASF Corp. v. Martineaus Auto Body, Inc., No. 18-cv-10881, 2019 WL 383885, at *5 (D. Mass. Jan. 30, 2019) (quoting Watkins v. Bai Brands, LLC, No. 17-cv-2715, 2018 WL 999677, at *4 (D.N.J. Feb. 20, 2018)).

As discussed supra, the notice provision in the acquisition agreement is a covenant, not a condition precedent, so the Court focuses on the parties' contract-based arguments, which appear to concern not the propriety of declaratory judgment, but, rather, the substantive issue of whether

the Court may invalidate or rescind the acquisition agreement based on Emerald's failure to include notice of Lambert's copyright on each published article.

As an initial matter, the Court notes that, as Lambert points out, [ECF No. 23 at 15], Emerald's motion targets only a small portion of the relief that the declaratory-judgment claim seeks, namely, his request that the Court "nullif[y] and/or terminate[]" Emerald's rights under the acquisition agreement, [Am. Compl. at 17–18]. It is also not obvious to the Court how this portion of Lambert's declaratory-relief claim differs from Lambert's breach-of-contract claim, which could conceivably justify dismissal, BASF Corp., 2019 WL 383885, at *5, though Emerald has not moved to dismiss on this basis.

On the merits of Emerald's challenge, "Florida law recognizes that rescission may be granted where a party breaches a term which is an essential part of the bargain between the contracting parties such that its breach destroys the entire contract." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit, 50 F.3d 908, 916 (11th Cir. 1995). A plaintiff seeking rescission under Florida law must, however, adequately plead the following six facts:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Metro. Life Ins. Co. v. Liebowitz, No. 22-cv-11794, 2023 WL 4420366, at *2 (11th Cir. July 10, 2023) (quoting Barber v. America's Wholesale Lender, 542 F. App'x 832, 836 (11th Cir. 2013)); see also Burlington Ins. Co. v. Bradley, No. 22-cv-14368, 2023 WL 11950162, at *6 (S.D. Fla. Aug. 24, 2023) (analyzing declaratory-judgment claim under "the Florida common law

rescission test"). Lambert has not argued that his Amended Complaint satisfies this test for rescission or responded substantively to Emerald's argument that he "has a remedy at law," [ECF No. 22 at 16], that is, the damages he seeks as part of his breach-of-contract claim. See [ECF No. 23 at 16]. Accordingly, Emerald's motion to dismiss Lambert's declaratory-judgment claim is **GRANTED IN PART** to the extent that claim requests rescission, but otherwise **DENIED**.

## IV.  CONCLUSION

For the reasons set forth above, Emerald's motion to dismiss, [ECF No. 21], is **GRANTED IN PART** and **DENIED IN PART**. Lambert's copyright-infringement claims may proceed except to the extent they are based on Emerald's alleged failure to include notice of Lambert's copyright ownership on articles published as part of the Journal; his breach-of-contract claim may proceed in full; and his claim for declaratory relief may proceed, except to the extent it seeks rescission of the acquisition agreement.

**SO ORDERED.**

September 10, 2025                               */s/ Allison D. Burroughs*
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE